UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
THE MARKS ORGANIZATION, INC.,

                                Plaintiff,

                                                          09 CV 10629 (KMW)
                -against-                                  OPINION AND ORDER

ROBERT JOLES, d/b/a GORDON CARPET,

                                Defendant.
-----------------------------------------------------------x
WOOD, U.S.D.J.:

        Plaintiff, The Marks Organization, Inc. ("Plaintiff"), has moved for a preliminary

injunction to prevent Defendant, Robert Joles, ("Defendant") from infringing Plaintiff's trade

name, "Gordon Carpet."

        A hearing was held on March 7, 2011 (the "Hearing"), where several witnesses gave

testimony and were cross-examined.

        Based on the evidence in the record, including the testimony given at the Hearing, and for

the following reasons, the Court GRANTS Plaintiff's motion for a preliminary injunction.

        **I.      Background**

        The parties' familiarity with the facts in this case is presumed.  For the purposes of this

Order, the court offers the following brief summary of undisputed facts, drawn from the parties'

submissions, as well as testimony given at the Hearing:

        In July 2008, Plaintiff purchased a carpet business located in Tappan, New York, from

Gerald Gordon Carpet Specialists, Inc. ("GGCS") for $127,636.00.  That business, started by

Gerald Gordon, was called "Gordon Carpet."  Gordon Carpet had been in business at that

particular location since 1977, and GGCS's advertisements stated that Gerald Gordon had been

in the carpet business since 1947.  The Gordon Carpet trade name was not registered with either

                                        1

New York State or the U.S. Patent & Trademark Office.  The Asset Purchase Agreement ("APA") governing the sale of the Gordon Carpet business to Plaintiff listed "all trade names" among the assets being purchased.  The APA also expressly allocated $62,000 of the purchase price to good will, the largest allocation for a single item.  The rest of the purchase price was allocated among furniture, fixtures and equipment; a restrictive covenant; a leasehold; and $12,636 allocated to "miscellaneous."  The Bill of Sale for the purchase did not mention trade names, but did include good will among the assets being transferred.

After Plaintiff purchased the Gordon Carpet business, he changed the store's name to "Leader Carpet."  There is another location of Leader Carpet located in Nanuet, New York. Plaintiff advertises his business in print and in the phonebook, and those advertisements state that the Tappan branch was "formerly Gordon Carpet."  Plaintiff invested $200,000 in remodeling the store, and added hard surface flooring to the store's stock.

Defendant had been the general manager of Gordon Carpet since 1997, and retained that position after Plaintiff purchased the business.  In June 2009, approximately one year after Plaintiff purchased the business, Defendant's employment was terminated.  In September 2009, Defendant opened a store called "Gordon Carpet," located in Northvale, New Jersey, less than 1/3 of a mile away from Plaintiff's Tappan, New York location (*i.e.*, the location of the original Gordon Carpet).  Defendant advertised the opening of his store with advertisements and a direct mailing campaign that featured in bold print the name "Gordon Carpet," along with his photograph, labeled, "Rob Joles, Owner," and the phrases, "NEW LOCATION," "Same Low Prices, Same Great Service," and "We're Back & Better Than Ever."

Plaintiff contacted his attorney in September 2009 to ask him to take measures to stop the new store's use of the name "Gordon Carpet."  Plaintiff then brought suit on December 31, 2009;

the delay between the September call to Plaintiff's counsel and the December filing of this action was attributed by Plaintiff's counsel to his investigation of the relevant facts and law. After obtaining multiple extensions, Defendant moved to dismiss the complaint based on lack of personal jurisdiction over him in New York. After a protracted period of jurisdictional discovery, Defendant withdrew the motion on November 5, 2010. In the meantime, on September 1, 2010, the case, which had been proceeding before Hon. Stephen C. Robinson, was adjourned pending reassignment. On November 15, 2010, the case was reassigned to the undersigned.

## II.   Preliminary Injunction Standard

The Second Circuit recently revised the test for issuing a preliminary injunction, in accordance with the Supreme Court's decision in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). *See Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010). Under the current test, in order to grant a preliminary injunction, a district court must determine that a plaintiff has shown: (1) a likelihood of success on the merits; (2) that absent an injunction Plaintiff is likely to suffer irreparable injury that cannot be remedied with monetary damages; (3) that the balance of hardships tips in favor of Plaintiff; and (4) that "the public interest would not be disserved" by the issuance of an injunction. *Salinger*, 607 F.3d at 79-80 (quoting *eBay, Inc.*, 547 U.S. at 391).[1]

## III.   Analysis

### A.   Likelihood of Success on the Merits

---

[1] The *Salinger* opinion held that the Supreme Court's test in the *eBay* decision was not limited to the patent context, and should be applied in the context of preliminary injunctions in copyright cases. 607 F.3d at 77. The court also noted that, although it was not "called upon to extend *eBay* beyond the context of copyright cases, [the court saw] no reason that *eBay* would not apply with equal force to an injunction in *any* type of case." *Id.* at 78 n.7 (emphasis added). District courts in this circuit have since applied the *eBay/Salinger* test in trademark cases. *See, e.g., New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010)

The Court finds that Plaintiff has demonstrated a likelihood of success on the merits of his lawsuit.[2]

Plaintiff's principal claim is one for trademark infringement under the Lanham Act. Section 43(a) of the Lanham Act states:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

To prevail on a trademark claim based on an unregistered trademark, a plaintiff "must demonstrate [1] that its unregistered . . . trade name is distinctive and [2] that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question." *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004).

### 1.      Plaintiff's Ownership of the Mark

As an initial matter, the Court must resolve whether Plaintiff has standing to bring this action (and this motion) by determining whether Plaintiff has exclusive rights to use the mark.

### a.  Plaintiff Purchased the Right to Use the Mark from GGCS

It is well settled that "[w]hen a business is sold as a going concern, trademarks and the good will of the business that they symbolize are presumed to pass with the sale of the business." 3 McCarthy on Trademarks and Unfair Competition § 18:37 (4th ed. 2011). *See President*

---

[2] Because the Court finds that Plaintiff has shown a likelihood of success on the merits of its Lanham Act claim, the Court declines to address Plaintiff's likelihood of success on its claims under New York and New Jersey state law.

4

*Suspender Co. v. Macwilliam*, 238 F. 159, 162 (2d Cir. 1916) ("A sale of a business and of its good will carries with it the sale of the trade-mark used in connection with the business, although not expressly mentioned in the instrument of sale."). Here, the APA included "trade names" among the assets being purchased, and allocated nearly half of the $127,636 purchase price to "Goodwill." The Bill of Sale also listed "good will" among the assets being transferred. Given these facts, as well as the general presumption that trade names and good will are transferred along with the sale of a business as a going concern, the Court concludes that Plaintiff became the legal owner of the "Gordon Carpet" trade name when it purchased the business in July 2008.

### b.      Plaintiff Has Not Abandoned the Trade Name

Throughout the litigation of this motion, Defendant has pressed the argument that Plaintiff was not using the "Gordon Carpet" trade name, and had thus abandoned it. The Court finds that Defendant has not demonstrated that Plaintiff abandoned the mark.

A plaintiff may not enforce rights in a trademark or trade name that it has abandoned. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir. 2007) ("Once abandoned, a mark returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace . . . ."). Under the Lanham Act,

> A mark shall be deemed to be "abandoned" . . . (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127. The party asserting abandonment bears the burden of persuasion with respect to both non-use and lack of intent to resume use in the reasonably foreseeable future. *ITC Ltd.*, 482 F.3d at 146. The Second Circuit has held that, because abandonment involves a forfeiture of a property interest, the elements of the defense must be strictly proved, and statutory aid to such

proof must be narrowly construed.  *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037,

1044 (2d Cir. 1980).  *See also Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151,

156 (S.D.N.Y. 2003); *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 295 (S.D.N.Y.

2000) (requiring clear and convincing evidence for abandonment defense).  Defendant has not

met this burden.

There is authority for the proposition that advertising a business as "formerly" another

business does not constitute abandonment of the prior business name.  *See Am. Ass'n for Justice*

*v. The Am. Trial Lawyers Ass'n*, 698 F. Supp. 2d 1129, 1138-40 (D. Minn. 2010) (holding that a

plaintiff's identification of itself as "Formerly the Association of Trial Lawyers of America" on

its website, in advertisements, and in the e-mail signature blocks of some staff; its continued

licensing of the ATLA mark to at least one licensee; the use of the ATLA mark in the names of

several publications; and the maintenance of the website "www.atla.org," in order to direct

consumers to the plaintiff's website; all served to defeat an abandonment defense); *see also First*

*Fed. Sav. & Loan Ass'n of Council Bluffs v. First Fed. Sav. and Loan Ass'n of Lincoln*, 929 F.2d

382, 385 (8th Cir. 1991) (holding that "[t]he new savings and loan['s] plans to capitalize on First

Federal Council Bluffs' good name by advertising itself as the 'former First Federal' . . .

support[s] a continuation of the injunction [prohibiting the defendant's use of First Federal] for

as long as the identification with the former institution is used by the new owners"); *Alliant*

*Energy Corp. v. Alltel Corp.*, 344 F. Supp. 2d 1176, 1187 (S.D. Iowa 2004) ("Despite a name

change, a trademark may still possess significant goodwill and remain a valuable asset to a

company . . . Even in cases such as the present one, where there are extensive efforts to notify

the public of the name change, there is still the possibility that goodwill remains in the marks.").

In addition, the Second Circuit has held that a lack of use for less than the statutory period does

not give rise to the presumption of lack of intent to resume use.  *See Defiance Button Machine Co. v. C & C Metal Products Corp.*, 759 F.2d 1053, 1060 (2d Cir. 1985).

Plaintiff's use of the "Gordon Carpet" mark is sufficient to defeat an abandonment defense.  Plaintiff's advertisements, where it identified its Tappan store as "formerly Gordon Carpet," plainly attempt to capitalize on the good will in the "Gordon Carpet" name by holding Plaintiff out as the successor to Gordon Carpet.  This intention was reinforced by an advertisement Plaintiff issued just before the purchase of the business was finalized, featuring a photograph of Plaintiff's president standing arm-in-arm with Gerald Gordon, with the statement "Another New Era Begins At Leader Carpet – Wishing Jerry Gordon All The Best With his New Ventures."  In light of Plaintiff's express use of the "Gordon Carpet" name, and its evident intent to exploit the good will in the name, the Court finds that Defendant has not met its burden to establish that Plaintiff has discontinued use of the name (let alone that Plaintiff does not intend to resume such use).

### 2.    Distinctiveness

The Court finds that the trade name, "Gordon Carpet," is distinctive.  The Second Circuit recognizes several categories of distinctiveness.  Proceeding in order from least to most distinctive, a mark can be generic, descriptive, suggestive, arbitrary, or fanciful.  *See Lane Capital Mgmt v. Lane Capital Mgmt.*, 192 F.3d 337, 344 (2d Cir. 1999).  Surnames and personal names are generally held to be descriptive.  *See Pirone v. MacMillan Inc.*, 894 F.2d 579, 583 (2d Cir. 1990).  To be protectable, a mark that is descriptive must acquire secondary meaning.  *Lane Capital*, 192 F.3d at 344.  The Second Circuit has enumerated several considerations that must be analyzed in determining whether a mark has acquired secondary meaning:  (1) advertising expenditures; (2) sales success; (3) unsolicited media coverage of the product; (4) attempts to

plagiarize the mark; (5) the length and exclusivity of the mark's use; and (6) consumer studies linking the name to a source.  *See New York City Triathlon*, 704 F. Supp. 2d at 330 (citing *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir.1985)).

Although the name, Gordon Carpet, is descriptive (as it is named after Gerald Gordon, who opened the store), Plaintiff submits evidence demonstrating that the name has acquired secondary meaning.  Gordon Carpet's advertisements show that it had been in the floor covering business since 1947, and Plaintiff shows that Gerald Gordon had been the exclusive user of the "Gordon Carpet" name in the region.  More importantly, the very fact that Defendant chose the name "Gordon Carpet," with the intent to exploit the good will in the mark, is essentially a concession that the mark had acquired secondary meaning in the market.  *See New York City Triathlon*, 704 F. Supp. 2d at 316 (noting that the defendant's use of the mark provides further evidence of secondary meaning) (citing *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 351 (S.D.N.Y. 1998)).  Defendant does not argue that the mark is not distinctive – on the contrary, he conceded that he chose it because it was the name with which his customers associated him, and not for any descriptive quality it may have had.

### 3.    Likelihood of Confusion

To determine likelihood of confusion, courts in the Second Circuit examine the factors set forth by Judge Friendly in *Polaroid Corp. v. Polaroid Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961):

(1) the strength of the plaintiff's mark;

(2) the similarity between the two marks;

(3) the proximity of the products in the marketplace;

(4) the likelihood that the prior owner will bridge the gap between the products;

(5) evidence of actual confusion;

(6) the defendant's bad faith;

(7) the quality of the defendant's product; and

(8) the sophistication of the relevant consumer group.

*See Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993). Although no one factor is dispositive, courts generally hold that the first three factors are the most significant.  *See New York City Triathlon*, 704 F. Supp. 2d at 341 (citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987)).

The *Polaroid* factors demonstrate a strong likelihood of confusion in this case.

(1)  <u>Strength of Plaintiff's Mark</u>

Plaintiff's mark is strong.  The name "Gordon Carpet" had been used to exclusively refer to Gerald Gordon's business for several decades, and the fact that Defendant purposely chose the name "Gordon Carpet" to continue to exploit the good will in the name further demonstrates the strength of the mark.

(2)  <u>Similarity Between the Two Marks</u>

The two trade names are, for all intents and purposes, identical.

(3) / (4)  <u>Proximity of the Products in the Marketplace and the Likelihood that the Prior Owner Will Bridge the Gap Between the Products</u>

These prongs look to the nature of the services, the structure of the relevant market, and require consideration of "the class of consumers to whom the goods are sold, the manner of advertising, the channels through which the goods are sold, and the extent to which the goods or services fall within the same class or are used together."  *New York City Triathlon*, 704 F. Supp. 2d at 317 (quoting *Clinique Labs. v. Dep. Corp.*, 945 F. Supp. 547, 553 (S.D.N.Y. 1996)).

Plaintiff and Defendant are engaged in businesses that are essentially identical: selling carpets and hard surface flooring in the Rockland and Bergen County region.  Indeed, the two showrooms are less than 1/3 of a mile away from each other, and thus compete to sell the same products to the same pool of customers.  Courts have held that "[p]roducts which directly compete in the marketplace clearly warrant a finding of the highest degree of competitive proximity."  *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 77 (2d Cir. 1988).

Given the proximity of the parties' businesses, there is no "gap" for Plaintiff to "bridge," and thus this factor weighs in favor of a finding of likelihood of confusion as well.

(5)  Evidence of Actual Confusion

Courts in this circuit consistently stress that "actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."  *Savin Corp. v. Savin Group*, 391 F.3d 439, 459 (2d Cir. 2004) (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)).  Nevertheless, Plaintiff offered evidence of several examples of actual confusion, including its receipt of invoices meant for Defendant's business, and regular inquiries by Plaintiff's customers as to which was the actual "Gordon Carpet."

(6)  Defendant's Bad Faith

This factor looks to "whether defendants adopted their mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between their and plaintiff's product."  *Tecnimed SRL v. Kidz-Med, Inc.*, No. 10 Civ. 7277, 2011 WL 182079, at *9 (S.D.N.Y. Jan. 18, 2011) (quoting *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 745 (2d Cir. 1998)).

Here, there is little question that Defendant chose the name "Gordon Carpet" with the intent to capitalize on the good will and reputation associated with that name.  Defendant himself worked as general manager at the original "Gordon Carpet" for over a decade, and was well aware of the good will in the name.  Defendant's advertisements further make his intentions clear, using the business name "Gordon Carpet," along with the phrases, "We're back and better than ever," "New Location," and "Same Low Prices, Same Great Service."  Defendant stated that the intended meaning of these phrases was that he, himself, was "back" and working at a "new location," and that he chose the name, "Gordon Carpet," because it was the name with which his customers associated him.  Defendant also argues that he, in good faith and after reasonable investigation, determined that the "Gordon Carpet" name was available before opening his store.

The Court does not know if Defendant acted in good or bad faith in choosing the "Gordon Carpet" name.  The record demonstrates that, at a minimum, Defendant did not engage in sufficient investigation to determine whether Plaintiff had obtained the exclusive right to use the name.  Without attempting to rule on Defendant's actual state of mind, it is enough to recognize that Defendant's clear awareness of, and evident intent to capitalize on, the good will associated with the "Gordon Carpet" name further weighs in favor of finding a likelihood of confusion.

(7)  Quality of the Defendant's Product

Neither party identifies any material differences between the quality of the products and services offered by the two parties' stores.  Therefore, this factor does not weigh in favor of a preliminary injunction.

(8) The Sophistication of the Relevant Consumer Group

The parties dispute the level of sophistication of the relevant consumer group.  Courts generally hold that "consumers of common household products are not sophisticated consumers for purposes of the *Polaroid* test."  *Tecnimed*, 2011 WL 182079, at *10.  Here, both parties sold carpeting and flooring to household consumers, but also sold the same products to commercial users, who are presumably more sophisticated.  In any event, the evidence of actual confusion by both suppliers and commercial clients demonstrates that confusion was possible even among more sophisticated consumers.

In sum, the *Polaroid* factors strongly weigh in favor of a finding of likelihood of confusion.  Six out of the eight factors strongly favor Plaintiff and the other two are, at best, neutral.  The most important factors – the first three – strongly suggest a likelihood of confusion.  In particular, the trade name is distinctive in the relevant market, the infringing trade name is identical to original trade name, and the parties are engaged in identical businesses less than 1/3 of a mile away from each other.  Even without the evidence of actual confusion, it would be apparent that consumers are likely to be confused as to who is the "real" "Gordon Carpet."

Defendant argues that, notwithstanding the *Polaroid* factors, confusion is not likely because Plaintiff is not actually using the "Gordon Carpet" name in its advertisements or to identify its store.  Plaintiff, however, is in fact using the words "formerly Gordon Carpet" in its advertisements.  In any event, Defendant's argument about Plaintiff's use is significant only insofar as Plaintiff has abandoned the mark and no longer has the exclusive right to use it.  Because the Court found that Plaintiff did not abandon the mark, Plaintiff has the exclusive right to use the mark (whether it is as the name of the store, or to identify the store as the "former" Gordon Carpet).  The Court thus finds that there is a strong likelihood of confusion under the *Polaroid* test.

**B.      Irreparable Harm**

The Court finds that Plaintiff has made the requisite showing that it will suffer irreparable injury absent injunctive relief.

**1.      Effect of Plaintiff's Delay**

As an initial matter, the Court must determine the effect of Plaintiff's delay, in seeking injunctive relief nearly 16 months after it learned of Defendant's infringing conduct.

Prior to the Second Circuit's decision in *Salinger v. Colting* in April 2010, a plaintiff's delay in seeking injunctive relief was analyzed in the context of whether it should deprive the plaintiff of the presumption of irreparable injury (which presumption would otherwise flow from a showing that consumer confusion was likely). *See, e.g., Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005). The Second Circuit held that "any such presumption of irreparable harm [became] inoperative if the plaintiff ha[d] delayed either in bringing suit or in moving for preliminary injunctive relief." *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995). *See also Weight Watchers Int'l*, 423 F.3d at 144 ("The presumption [of irreparable injury] may be defeated . . .when a party has delayed in seeking injunctive relief."). The theory behind this principle was that "the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler*, 60 F.3d at 968 (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir.1985)).

This analysis is no longer applicable, because under the Second Circuit's decision in *Salinger*, courts may not presume irreparable injury from a showing of likelihood of success on the merits. *See* 607 F.3d at 80 (holding that courts "must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm (unless such a 'departure from the

long tradition of equity practice' was intended by Congress")") (quoting *eBay*, 547 U.S. at 391, 393-94).   Now, on an application for a preliminary injunction, courts must determine whether a movant has made an actual showing of imminent irreparable injury in the absence of an injunction.

This leaves open the question of what effect Plaintiff's delay should have on the Court's determination of irreparable injury here.   The Court declines to take the position that delay alone requires denial of a preliminary injunction motion.   *See Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) ("[T]he Court of Appeals has not yet held that unexcused delay alone necessarily defeats a preliminary injunction motion.") (citing *Tough Traveler, Ltd.*, 60 F.3d at 969 (Jacobs, J., concurring) ("[The rule] does not preclude preliminary relief even if the district court finds unexcused delay.   Delay is just one of several factors to consider.")).   In particular, courts have held that delay does not require denial of a preliminary injunction "if . . . the likelihood of confusion is so great that it outweighs the effect of plaintiff's delay in bringing suit."   *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy, P.C.*, 314 F.3d 62, 68 (2d Cir. 2002).   *See also id.* ("Given the strong interest in preventing public confusion . . . a plaintiff's apparent acquiescence or delay in bringing suit does not necessarily bar relief.").

The Court thus begins its analysis by recognizing the Second Circuit's instruction that "[a] district court should *generally* consider delay in assessing irreparable harm," even if it is not dispositive of the issue.   *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) (emphasis added); *see also Hasbro, Inc.*, 858 F.2d at 79 ("The senior user's delay in asserting its trademark claim is an example of a factor which, when appropriate, may also be considered in addition to the enumerated *Polaroid* factors.").

14

First, the Court must determine whether Plaintiff's delay was justified.  The Second Circuit has found delays of "as little as ten weeks" sufficient to defeat the presumption of irreparable harm.  *Weight Watchers*, 423 F.3d at 145 (citing *Citibank*, 756 F.2d at 277) (delay of nine months after receiving notice of infringement in the press, and ten weeks after receiving actual notice of infringement)).  The main justifications for delay that courts in this circuit accept are that the delay was caused by: "[1] the plaintiff's ignorance of the defendant's competing product or [2] the plaintiff's making good faith efforts to investigate the alleged infringement." *Tough Traveler*, 60 F.3d at 968.  Decisions also acknowledge that diligent pursuit of settlement negotiations can justify delay (but that extensive delay after negotiations break down will still defeat the presumption).  *See Marcy Playground*, 6 F. Supp. 2d at 281.

Here, Plaintiff's delay was caused by good faith efforts to investigate the facts and law, by Defendant's delays occasioned by the pursuit of a meritless personal jurisdiction motion to dismiss,[3] by settlement discussions,[4] and by delay from the transfer of the case to the undersigned.[5]  Plaintiff, himself, timely notified his lawyer of Defendant's infringing conduct upon learning of the store's opening.  His lawyer, however, spent almost four months researching the facts and law before filing suit on December 31, 2009.

---

[3] Defendant sought extensions to respond to the complaint and ultimately moved to dismiss for lack of personal jurisdiction on March 3, 2010.  Plaintiff's counsel stated that he made the strategic decision to resolve the issue of personal jurisdiction before moving forward.  This process ended up lasting through nearly all of 2010, as Defendant repeatedly opposed Plaintiff's demands for jurisdictional discovery.

[4] Plaintiff's counsel also states that counsel for the parties engaged in settlement discussions in late February – early March 2010, and that after a court conference in May 2010, he again proposed settling the matter.

[5] On September 1, 2010, the matter was formally adjourned pending reassignment from Hon. Stephen Robinson, before whom the case had been proceeding.  The case was transferred to the undersigned on November 15, 2010.  Plaintiff filed its motion for a preliminary injunction on December 18, 2010

Although Plaintiff's delay may have permitted some irreparable harm to continue for an unusually long time, under the circumstances in this case, Plaintiff's delay alone should not defeat the preliminary injunction motion.  As the Second Circuit explained, the cases where courts held that a plaintiff's delay defeated the presumption of irreparable injury were "cases in which the fair inference was drawn that the owner of the mark  . . . had concluded that there was no infringement but later brought an action because of the strength of the commercial competition."  *Tom Doherty Assocs.*, 60 F.3d at 39.  This is not such a case.  Under *Salinger*, Plaintiff retains the burden to show a likelihood of irreparable injury, and its delay can be factored into the likelihood that further injury is possible, but the delay alone does not require denial of its motion, particularly where the likelihood of confusion is so great.  *See ProFitness Physical Therapy Ctr.*, 314 F.3d at 68.

## 2.     Evidence of Irreparable Harm

Plaintiff has made a convincing showing that, given the high likelihood of confusion, a preliminary injunction is necessary to prevent irreparable injury.

Irreparable injury has been defined as harm where "remedies available at law, such as monetary damages, are inadequate to compensate" the plaintiff.  *Salinger*, 607 F.3d at 80 (quoting *eBay*, 547 U.S. at 391).

As previously explained, prior to *Salinger*, courts in this circuit tended to presume irreparable injury in trademark cases where a likelihood of confusion was shown.  The Second Circuit explained the basis for that presumption as follows.

> Where there is . . . such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows. While an injured plaintiff would be entitled to recover the profits on the infringing items, this is often difficult to determine; moreover, a defendant may have failed to earn profits because of the poor quality of its product or its own inefficiency. Indeed, confusion may cause purchasers to refrain from buying either product and

to turn to those of other competitors. Yet to prove the loss of sales due to infringement is also notoriously difficult. Furthermore, if an infringer's product is of poor quality, or simply not worth the price, a more lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market.

*Omega Importing Corp. v. Petri-Kine Camera Co*., 451 F.2d 1190, 1195 (2d Cir. 1971)

(Friendly, C.J.).  Although the presumption of irreparable injury is no longer in effect after

*Salinger*, the principles articulated in *Omega Importing* remain no less true.  Thus, although a

likelihood of confusion does not create a presumption of irreparable injury, a particularly strong

likelihood of confusion should weigh in favor of finding irreparable injury.  The court in

*Salinger* acknowledged (in the context of copyright infringement) that "the harm to the

plaintiff's property interest has often been characterized as irreparable in light of possible market

confusion," and directly quoted the statement from *Omega Importing* that "to prove the loss of

sales due to infringement is . . . notoriously difficult."  *Salinger*, 607 F.3d at 81 (quoting *Omega

Importing Corp.*, 451 F.2d at 1195).

A plaintiff may also show a threat of irreparable injury by showing a threatened loss of

good will and loss of ability to control its reputation.  *See New York City Triathlon*, 704 F. Supp.

2d at 325.  Loss of good will is particularly difficult to quantify because monetary damages do

not "redress the loss of a relationship with a client that would produce an indeterminate amount

of business in years to come."  *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999).

Plaintiff has shown that Defendant's infringement has resulted, and continues to result, in

a loss of good will.  Customers who had long been loyal to Gordon Carpet both prior to, and

after, Plaintiff's purchase of the business later switched to Defendant's store, and customers

continue to be confused as to who is the true successor to the customer relationships previously

held by Gerald Gordon, and the original Gordon Carpet.  Plaintiff states, and Defendant does not

dispute, that customers tend to buy carpet every few years, and so it is thus likely that a not

insignificant number of customers of the original Gordon Carpet will be confused when the time to purchase carpet arises and they attempt to find Gordon Carpet.  It is impossible to accurately quantify precisely how much business Plaintiff has lost, and will continue to lose, as a result of Defendant's exploitation of the "Gordon Carpet" name.

Defendant argues that any customers who have deserted Plaintiff for Defendant's store were motivated by Defendant's own reputation in the region, as well as the good customer service and lower prices that his store offers.  The problem with Defendant's argument is that where the likelihood of confusion is so high, it is impossible to disaggregate lost good will from confusion.  Defendant is certainly entitled to compete with Plaintiff by offering lower prices or exploiting his personal relationships with customers, but in choosing the "Gordon Carpet" name for his store, locating it down the block from Plaintiff's store, and stating that "Gordon Carpet" was "back and better than ever" in a "new location," Defendant went much farther.  The extreme likelihood of confusion (as well as evidence of actual confusion) makes it clear that Plaintiff has lost good will because of this confusion.  The Court thus finds that Plaintiff has met its burden of showing irreparable injury absent an injunction.

C.    **Balancing the Hardships**

Under the *Salinger* standard, a court must also "consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor."  *Salinger*, 607 F.3d at 80.  The Court finds that the balance of hardships does tip in the Plaintiff's favor in this case.

Plaintiff purchased the Gordon Carpet business from GGCS as a going concern, and allocated a substantial portion of the purchase price to good will.  Although Plaintiff did not exploit that good will directly, by retaining "Gordon Carpet" as the name of the store, it plainly

sought to hold itself out as the successor to Gordon Carpet, to capitalize on Gordon Carpet's customer relationships.

Plaintiff's purchase of the Gordon Carpet business, and the trade names along with it, gave it the exclusive right to exploit the good will in that name, as long as it did not abandon the name. The Court has already concluded that Plaintiff did not abandon the name.

Defendant argues that he, in good faith, determined that the "Gordon Carpet" trade name was abandoned and available for him to use, and that it was the name with which his customers associated him. He argues further that he has invested time and money in establishing his business, while Plaintiff is not using – and has never used – the "Gordon Carpet" name. Defendant also argues that Plaintiff is not being harmed, because any customers who abandoned Plaintiff for Defendant, did so because of their relationship with Defendant and the lower prices at his store.

As explained, *supra*, there is nothing to stop Defendant from competing with Plaintiff by exploiting his customer relationships and offering lower prices. Defendant may not, however, compete by sowing confusion in the marketplace through the use of a name that belongs to a different business. Even if Defendant did not believe that Plaintiff owned the right to use the "Gordon Carpet" name, his advertisements stating that "Gordon Carpet" was "back" in a "new location" could only have the effect of confusing customers as to whether the new "Gordon Carpet" business was the connected to the previous business with the exact same name. The injunction imposed by this Court should not have any effect on Defendant's ability to continue to run his business and compete with Plaintiff in every way except through the use of a confusing trade name that Defendant does not have the right to use.

In light of these facts, the Court finds that the balance of hardships tips in favor of Plaintiff.

### D.    Public Interest

The final prong of the *Salinger* test is to "ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction."  607 F.3d at 80 (quoting *eBay,* 547 U.S. at 391).

There is nothing in the record to suggest that public interest would be disserved by the issuance of a preliminary injunction in this case.  On the contrary, the Second Circuit has long held that there is a "strong interest in preventing public confusion."  *ProFitness Physical Therapy Ctr.*, 314 F.3d at 68.  Defendant's use of the "Gordon Carpet" name has caused, and continues to cause, substantial confusion in the market, and the public interest would be served by eliminating that confusion.

### III.    Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for a preliminary injunction.

NOW THEREFORE IT IS HEREBY ORDERED, that Defendant, Robert Joles, d/b/a Gordon Carpet, its successors and/or assignees,

1.    Is enjoined from imitating, copying or making unauthorized use of Plaintiff's "Gordon Carpet" Mark as a trademark, trade name or domain name, either standing alone or as part of any other name or mark;

2.    Is enjoined from using "Gordon Carpet" or any variation thereon as a name, trademark, trade name or domain name, either standing alone or as a part of any other name or mark;

3.      Is enjoined from using any name or mark that is a colorable imitation of, a variation on, or is confusingly similar to Plaintiff's "Gordon Carpet" Mark;

4.      Is enjoined from using "Gordon Carpet" Mark or any marks confusingly similar in its electronic and print advertising, promotional, and marketing content, including in its communications with customers;

5.      Is enjoined from using "Gordon Carpet" or any reproduction, counterfeit, copy, colorable imitation thereof, or any words confusingly similar, as a trademark, trade name, domain name or otherwise in connection with the advertising, display, sale, offering for sale or distribution of any goods or services in any medium, including, but not limited to, the Internet and television and mail, in such a manner that is likely to cause confusion or mistake or to deceive customers or the public or give the impression that Defendant or its products or services originate with, are affiliated with, are sponsored by, approved by or in any way connected to Plaintiff;

6.      Is enjoined from taking any other actions that infringe or dilute the value Plaintiff's "Gordon Carpet" Mark;

7.      Shall immediately comply with the provisions of this Order and must inform the Court within five (5) business days after issuance of this Order that it has indeed complied with the terms of this Order and is not using the prohibited name and mark in any manner whatsoever; and that it is further

ORDERED that security in the amount of $ 50,000 be posted by the Plaintiff within five (5) business days after the issuance of this Order; and that it is further

ORDERED that entry of this Order with the Court's electronic case filing system be deemed good and sufficient service.

The parties shall file a Joint Pretrial Order by April 18, 2011.  The case will be deemed Ready for Trial as of April 26, 2011.  Counsel must consult the undersigned's Individual Rules regarding the contents of the Pretrial Oder and the meaning of "Ready for Trial."

SO ORDERED.

DATED:    New York, New York
          March 16, 2011

KIMBA M. WOOD
United States District Judge

22